**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

BRAND ADVANTAGE GROUP, INC.,          Civil No. 20-225 (JRT/HB)

                    Plaintiff,

                                 **MEMORANDUM OPINION AND**
v.                                       **ORDER**

DAVE HENSHAW,

                    Defendant.

---

Ansis V. Viksnins, **MONROE MOXNESS BERG, PA**, 7760 France Avenue South, Suite 700, Minneapolis, MN 55435, for plaintiff.

David H. Weber, **CONWAY, OLEJNICZAK & JERRY, SC**, 231 South Adams Street, Green Bay, WI 54301, and James D. Knudsen, **STICH ANGELL KREIDLER & UNKE, PA**, France Place, 3601 Minnesota Drive, Suite 450, Minneapolis, MN 55435, for defendant.

Plaintiff, Brand Advantage Group, Inc. ("BAG") filed a Motion for a Preliminary Injunction against its former employee Defendant Dave Henshaw seeking to enjoin Henshaw from (1) providing services to any person or business that was a customer or supplier of BAG six months prior to his resignation; (2) diverting BAG's business through solicitation of BAG's customers or suppliers; and (3) litigating a first-filed declaratory judgment action in Wisconsin state court. Henshaw filed a Motion to Dismiss under Fed. R. Civ. P. 12(b)(6) arguing BAG's claims that allege breach-of-contract should be dismissed

for failure to state a claim and, in the alternative, requested that the Court stay or dismiss BAG's action under the first-filed rule.

Because the Court finds that (1) compelling circumstances exist to allow this second filed action to continue; and (2) the clear terms of the Employment Agreement show that the restrictive covenant related to Henshaw's use of confidential information is enforceable, but that the covenant governing non-solicitation expired over twenty-six years ago, the Court will grant in part and deny in part Henshaw's Motion to Dismiss.

Because the Court finds that (1) federal courts may not enjoin a party from litigating a parallel action in state court under 28 U.S.C. § 2283; and (2) BAG has failed to meet the *Dataphase* factors regarding its remaining preliminary injunction requests, the Court will deny BAG's motion for a preliminary injunction.

## BACKGROUND

### I.  THE PARTIES

BAG is a corporation based in Plymouth, Minnesota with offices in Green Bay, Wisconsin.  (Notice of Removal ¶ 1, Ex. A ("BAG Compl.") ¶ 1, Jan. 15, 2020, Docket No. 1-1;  1st Decl. of David Daoust ("Daoust  Decl.") ¶ 2, Jan. 17, 2010, Docket No. 7.)  BAG provides commercial printing services, as well as other marketing products and services. (BAG Comp. ¶ 1, Daoust Decl. ¶ 2.)

Henshaw is a Wisconsin resident and worked for BAG or one of its predecessors as a sales representative from January 1993 until December 2019.  (BAG Compl. ¶¶ 2, 8, 13–15.)  When Henshaw first assumed this position in 1993, the business was owned and operated by Quality and Safeguard Business Systems, Inc. ("Quality).  (*Id.* ¶¶ 7–8, 12.)  In July 2014, Quality's assets were acquired by Safeguard Acquisitions, Inc. ("SAI").  (*Id.* ¶ 12.)  In March 2017, BAG acquired SAI's assets.  (*Id.* ¶ 13.)  Henshaw primarily worked out of BAG's Green Bay office, although he had frequent contact with BAG's Minnesota office.  (Daoust  Decl. ¶ 3.)  Henshaw's primary responsibility was to solicit orders for BAG's goods, products, and services.  (BAG Compl.  ¶ 7.)

## II.  THE EMPLOYMENT AGREEMENT

Upon his start at Quality in 1993, Henshaw entered into an Employment Agreement.  (Daoust Decl. ¶ 4 & Ex. A ("Employment Agreement") , Jan. 17, 2020, Docket No. 7-1.)  Relevant here, the Employment Agreement contained the following terms.

### A.  Term of Contractual Relationship – Section Four

Section four of the Employment Agreement contains a section titled "Term of Contractual Relationship."  (Employment Agreement ¶ 4.)  This section limits the duration of the contractual relationship to one-year; January 6, 1993 to January 6, 1994, but defines conditions that must be met for earlier termination by Henshaw or Quality, with or without cause.

**B. The Confidentiality Clause – Section Six**

The confidentiality provision protects against the disclosure of Quality's "proprietary information," which was defined, non-exhaustively, to include:

> compilations and lists of customers' names and addresses, (documents relating to the needs and desires of existing and prospective customers), management systems and techniques, methods of operation, sales and marketing plans, product lists, price lists, prospect lists, mailing lists, written pricing procedure, written commission structure information, and employee lists.

(*Id.* ¶ 6.)

The same provision also prohibits the disclosure of "any information, business processes, formulas, patterns, compilations, programs, devices, methods, or techniques, used or owned by customers of Quality." (*Id.*) The confidentiality provision states multiple times that it survives and applies even after the Employment Agreement is terminated. (*Id.*)

**C. The Noncompete – Section Seven**

The Employment Agreement also contains a covenant not to compete. (*Id.* ¶ 7.) This covenant contains two sub-covenants that limit Henshaw's ability to (1) provide services to certain customers, suppliers, and competitors and (2) divert business from customers and suppliers through solicitation. (*Id.*)

The covenant not to provide services to a competitor states the following:

> Employee hereby agrees that **during the term of this Agreement and for a period of one (1) year following the**

> termination of __employment,__ . . . Employee will not directly or indirectly . . . provide services to any person or business that is or within the six (6) month period prior to termination was a competitor with any product or service marketed or specifically planned for marketing by Quality . . . if any such person or business is located in or does business in any county of the states of Iowa, Minnesota, Michigan and/or Wisconsin where Quality has made sales during the term of this Agreement.

(*Id.* (emphasis added))  A similar provision applies to certain customers and suppliers but is not limited by geographic scope.  (*Id.*)

The covenant not to divert business through solicitation directly follows the covenant not to provide services to a competitor and states the following:

> In addition, **during the one (1) year period following termination of this __Agreement__**, Employee will not directly or indirectly, attempt to divert any business of Quality by soliciting, contacting or communicating with any customers, specifically identified prospective customers, suppliers or specifically identified prospective suppliers of Quality's products with whom Employee had business dealings or contact or with whom Employee acquired knowledge of during the term of this Agreement.

(*Id.* (emphasis added).)

### D.  Binding Effect – Section Fourteen

Section fourteen of the Employment Agreement contains a provision dealing with assignments, and states that:

> **This Agreement shall be binding upon and inure to the benefit of Quality, its successors and assigns** and to Employee, his heirs and legal representatives; provided, that the rights of Employee hereunder are personal and may not

be assigned or transferred except as may be agreed to in
writing by Quality.

(*Id.* ¶ 14 (emphasis added).)

### E. Choice-of-Law & Forum Selection Clause – Section Sixteen

Section sixteen of the Employment Agreement contains a choice of law provision

and states that any dispute "arising out of, in connection with or by reason of this

Agreement, shall be governed by the laws of the state of Minnesota."  (*Id.* ¶ 16.)  Section

sixteen also states that the parties "agree to submit to the jurisdiction of the District

Court, State of Minnesota, Fourth Judicial District, in the event any action, special

proceeding, or other proceeding shall be brought regarding this Agreement and the

performance or [sic] either party hereunder."  (*Id.*)

## III. CONDUCT THAT LED TO DISPUTE

### A. Henshaw's Activity

Henshaw resigned from BAG on December 13, 2019, stating that he was doing so

"for cause."  (Daoust  Decl. ¶ 12-13 & Ex. C, Jan. 17, 2020, Docket No. 7-1.)  Following his

resignation, Henshaw began working for American Solutions for Business ("ASB"), a

corporation located in Glenwood, Minnesota.  (*Id.* ¶ 18–19.)

BAG alleges that, prior to his resignation, Henshaw began soliciting current BAG

customers to leave BAG and join him at his new employer.  (BAG Compl. ¶ 17.)  After

Henshaw's resignation, customers sent emails to Henshaw's old BAG email address

indicating that they had been solicited by Henshaw. (*Id.*)  BAG alleges upon information and belief that Henshaw violated the confidentiality clause of the Employment Agreement by sharing pricing information and other non-public information when engaging in these solicitations.  (*Id.*)

BAG alleges that in or around late December 2019, one of BAG's former customers, Mouser Cabinetry, moved its business to ASB as a result of Henshaw's solicitation activity. (*Id.* ¶ 18; Daoust Decl. ¶¶ 16, 18–19 & Ex. D, Jan. 17, 2020, Docket No. 7-1.)  In or around mid-January 2020, BAG alleges that Henshaw solicited the business of an additional BAG customer and one BAG supplier.  (2nd Decl. of David Daoust ¶ 14, Jan. 28, 2020, Docket No. 23.)

## B.  Legal Action

Shortly after Henshaw's resignation, BAG sent a letter to Henshaw reminding him of his non-compete and confidentiality obligations.  (Decl. of Ansis V. Viksnins ("Viksnins Decl.") ¶ 2, Ex. 1, Jan. 17, 2020, Docket No. 8.)  On January 2, 2020, after learning of Henshaw's solicitation of Mouser Cabinetry, BAG wrote Henshaw again, informing him that BAG would "begin formal legal action" to enforce the restrictive covenants in the Employment Agreement if Henshaw did not confirm in writing by close of business Monday, January 6, 2020 that Henshaw was no longer servicing BAG customers.  (Viksnins Decl. ¶ 3, Ex. 2.)

On the morning of January 7, 2020, Henshaw's attorney, David Weber, called BAG's attorney, Ansis Viksnins, and indicated that he was recently retained and would get back to BAG with Henshaw's position on the January 2, 2020 letter in the next couple of days.  (Viksnins Decl. ¶ 5, Ex. 3.)

On the morning of Friday, January 10, 2020, having not heard back from Weber Viksnins emailed Weber seeking Henshaw's position on the January 2 letter.  (Viksnins Decl. ¶ 6, Ex. 3.)   Viksnins noted that BAG was "prepared to commence litigation if necessary" but hoped that it would be unnecessary.  (*Id.*)

On the morning of Saturday, January 11, 2020, Weber emailed Viksnins a copy of a summons and complaint filed on January 9, 2020 in Wisconsin state court seeking (1) a declaratory judgment that the Employment Agreement was invalid; and (2) certain monetary damages, presumably in tort, for alleged violations of Wisconsin criminal statutes.  (Notice of Removal ¶ 7, Ex. B ("Henshaw Compl.") ¶¶ 5, 16.)  Shortly after receiving Weber's email, BAG filed its complaint in Minnesota state court alleging three Counts: (1) breach-of-contract for providing services to a competitor (ASB), using BAG's confidential information, and diverting business through solicitation; (2) breach of the duty of loyalty; and (3) tortious interference with business relations.  (BAG Compl. ¶¶ 21–36.)

Viksnins and Weber eventually spoke by telephone on January 14, 2020.  (Viksnins Decl. ¶ 9.)  Weber stated that Henshaw would not abide by the Employment Agreement's

restrictive covenants as it was Henshaw's position that the Employment Agreement—including all its restrictive covenants—was terminated by the Employment Agreement's own terms on January 6, 1994.  (*Id.*)

## IV. PROCEDURAL BACKGROUND

On January 15, 2020, Henshaw removed BAG's Minnesota-filed action to this Court.  (Notice of Removal at 5.)

On January 17, 2020, BAG moved for a preliminary injunction to enjoin Henshaw from (1) providing services to customers or suppliers (but not from servicing a competitor as alleged in its complaint);[1] (2) from diverting BAG's customers through solicitation; and (3) litigating his declaratory judgment action in Wisconsin state court Action.  (Pl.'s Mot. for Preliminary Injunction, Jan. 17, 2020, Docket No. 5.)

On January 20, 2020, Henshaw moved to dismiss the BAG Complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim or, in the alternative, to stay or dismiss the proceeding under the "first-filed" rule.  (Def.'s Mot. to Dismiss & Mot. to Stay, Jan. 20, 2020, Docket No. 12.)

---

[1] BAG affirmatively stated during the hearing before the Court on these motions that it was never attempting to enforce Henshaw's alleged breach of the covenant not to provide services to a competitor.  The Court notes that this is in direct conflict with the complaint.  Even so, because of BAG's statements at the hearing, the Court will dismiss without prejudice from the Complaint BAG's claim for breach-of-contract related to Henshaw servicing a competitor.

**DISCUSSION**

I.    **FIRST-FILED RULE**

  A.  **Standard of Review**

 "The well-established rule is that in cases of concurrent jurisdiction, the first court in which jurisdiction attaches has priority to consider the case." *Northwest Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1005 (8th Cir. 1993) (internal quotations omitted). "The prevailing standard is that in the absence of compelling circumstances, the first-filed rule should apply." *Id.* (cleaned up). Further, motions to enjoin a party from litigating a parallel action in another forum are not subject to the traditional "*Dataphase* standards for injunctive relief," but are determined under a first-filed rule analysis. *Id.*

There is no complete list of compelling circumstances, but two primary "red flag" factors are: (1) that the first-filing party was on notice of a potential lawsuit; and (2) the first-filed action seeks declaratory relief, which may be "indicative of a preemptive strike" to deny the true plaintiff its chosen forum. *Id.* at 1007. Secondary factors include: (3) a finding that the first-filing party acted in bad faith; (4) the first-filing party raced to the courthouse to preempt a suit by the second-filing party; and (5) the first-filing party does not allege that the second-filing party's actions have had an adverse effect on the first-filing party. *Clergy Fin., LLC v. Clergy Fin. Servs., Inc.*, 598 F. Supp. 2d 989, 994 (D. Minn. 2009) (citing *Northwest Airlines*, 989 F.2d at 1007).

## B. Analysis

The two primary "red flag" factors are clearly present here: Henshaw was on notice that BAG was going to file suit, and Henshaw sought a declaratory judgment in Wisconsin state court.[2]

At least two of the secondary factors are also present.  First, Henshaw acted in bad faith when he misled BAG to believe he needed more time to respond to BAG's January 2, 2020 letter.  Instead of informing BAG of Henshaw's position as promised, Henshaw used the extra time to file a declaratory judgment action in Wisconsin.  The second-filed action may continue when "the plaintiff in the first-filed action was able to file first only because it had misled the filer of the second-filed action as to its intentions regarding filing suit in order to gain the advantages of filing first."  *See Brower v. Flint Ink Corp.*, 865 F. Supp. 564, 569 (N.D. Iowa 1994) (citing *Goodyear Tire & Rubber Co.*, 920 F.2d at 489). Second, by filing his Wisconsin state-court action one week after being put on notice of imminent suit by BAG, Henshaw's actions are indicative of a "race to the courthouse" to usurp the true plaintiff's choice of forum.  *See Anheuser-Busch, Inc. v. Supreme Int'l Corp.*, 167 F.3d 417, 419 (8th Cir. 1999) (noting that less than two weeks passing between notice

---

[2] Henshaw argues that the Wisconsin action is not a declaratory judgment action because it also includes claims for monetary damages pursuant to two Wisconsin criminal statutes aimed at preventing certain conspiracies and from coercing a person from engaging in lawful work.  (*See* Henshaw Comp. ¶¶ 12–16).  Yet, these claims are wholly dependent on the declaratory judgment action, as Henshaw has not alleged any additional conduct by BAG that could lead to a violation of either statute.  (*Id.*)

and the filing of the first suit "suggests that [the first-filing party] raced to the courthouse to usurp [the true plaintiff's] forum choice").

The Court therefore finds compelling circumstances exist to allow the second-filed action to proceed.

Despite this finding, the Court will not enjoin Henshaw from litigating his first-filed state court action in Wisconsin.  Federal courts may not enjoin a defendant from proceeding with a parallel state court action except in narrow circumstances that are not present here.  28 U.S. Code § 2283 ("A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.")

Accordingly, the Court will deny Henshaw's motion to stay or dismiss under the first-filed rule and will also deny BAG's preliminary injunction to the extent it seeks to enjoin Henshaw from litigating the Wisconsin state-court matter.

## II.  CHOICE OF LAW

The parties dispute whether Minnesota or Wisconsin law governs the Employment Agreement, even though the Employment Agreement contains an explicit choice of law provision choosing Minnesota law as the governing law.

### A.    Standard of Review

"A federal court sitting in diversity ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 65 (2013).  "[U]nder Minnesota law, a contractual choice-of-law provision will govern so long as the parties acted in good faith and without an intent to evade the law." *St. Jude Med. S.C., Inc. v. Biosense Webster, Inc.*, 818 F.3d 785, 788 (8th Cir. 2016) (cleaned up).  The choice-of-law provision must also be constitutionally permissible. *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 313 (1981).  To that end, the State must have "significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Id.*

### B.    Analysis

Neither party alleges the choice of law provision was entered into in bad faith or with intent to evade the law.  Further, Minnesota has significant contacts that create state interests: (1) BAG is a Minnesota corporation; (2) BAG's predecessor, Quality, also appears to have been a Minnesota company; (3) Henshaw was employed by Quality and BAG and visited or contacted BAG's Minnesota offices at least somewhat consistently; and (4) finally, Henshaw agreed to apply Minnesota law to any disputes that arose from the Employment Agreement.  Thus, application of Minnesota law is fundamentally fair. *Id.*

Accordingly, the Court finds the choice-of-law provision enforceable and that Minnesota law governs the dispute.

### III.  HENSHAW'S MOTION TO DISMISS

BAG alleges three counts in its complaint: (1) breach-of-contract; (2) breach of the duty of loyalty; and (3) tortious interference of business relations.  Henshaw moves only to dismiss BAG's breach-of-contract claim under Federal Rule of Civil Procedure Rule 12(b)(6).

### A.  Standard of Review

In reviewing a motion to dismiss under Rule 12(b)(6), the Court considers all facts alleged in the complaint as true to determine if the complaint states a "claim to relief that is plausible on its face."  *Braden v. Wal-Mart Stores, Inc.,* 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)).   "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  The Court accepts the complaint's factual allegations as true and construes the complaint in a light most favorable to the plaintiff.  *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B.  Analysis

Henshaw argues that BAG fails to state a plausible claim for breach-of-contract because section four of the Employment Agreement states that the Agreement expired

on January 6, 1994 and, as such, the restrictive covenants also expired on that date.[3]   The

Court agrees that the Employment Agreement expired by its own terms in 1994.   Even so,

BAG may plausibly plead a claim for breach-of-contract related to Employment

Agreement's confidentiality and non-solicitation covenants—the only restrictive

covenants in dispute—if they contain explicit language indicating that they survived the

Employment Agreement's expiration.[4]   *See Burke v. Fine*, 608 N.W.2d 909, 912 (Minn. Ct.

App. 2000) (noting that without explicit contractual language stating otherwise, when an

employment contract expires its restrictive covenants expire as well).

Determination of this issue necessitates an interpretation of the Employment

Agreement.   "Interpreting a contract requires [the Court] to determine if the language is

clear and unambiguous, meaning it has only one reasonable interpretation."   *Seagate*

*Tech., LLC v. W. Digital Corp.*, 854 N.W.2d 750, 761 (Minn. 2014).   "If so, [the Court must]

give effect to the language of the agreement."   *Id.*   The Court must also look to the

---

[3] Henshaw also argues the Employment Agreement was never assigned to BAG and thus, BAG lacks standing.   Henshaw appears to misread the Employment Agreement, however, which states "[t]his Agreement shall be binding and upon and insure to the benefit of Quality, its successors and assigns . . . ."   (Employment Agreement ¶ 16.)   There is no dispute that BAG is a successor of Quality, thus BAG has standing to enforce the Employment Agreement by its plain terms.

[4] BAG appears to hint that an implied-in-fact contract may also exist.   *See, e.g., Webb Candy, Inc. v. Walmart Stores, Inc.*, No. 09-CV-2056(PJS/JJK), 2010 WL 2301461, at *8 (D. Minn. June 7, 2010) ("[W]hen parties continue to perform under an expired contract, their conduct can give rise to a new, implied-in-fact contract.")   The Court need not reach the issue, however, because the outcome would be the same based on the plain language of the restrictive covenants.

"contract as a whole and attempt to harmonize all clauses of the contract" thus attempting "to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525–26 (Minn. 1990).

### 1. Section Six's Confidentiality Covenant

BAG alleged that Henshaw used confidential information to solicit BAG customers in violation of the Employment Agreement.  Section six states that Henshaw "agrees not to divulge or use any proprietary information for his own use or another's benefit, either during the term of this Agreement or afterwards"; (2) that the "provision shall apply notwithstanding the termination of the contractual relationship"; and (3) that Henshaw's "obligation of nondisclosure does not terminate with the termination of the contractual relationship."  (Employment Agreement ¶ 6.)

The Court therefore finds that the Employment Agreement unambiguously states that the confidentiality covenant survives the termination of the underlying Employment Agreement.  Consequently, the Court also finds that BAG plausibly pleads a claim for breach-of-contract under the confidentiality covenant.

Accordingly, the Court will deny Henshaw's Motion to Dismiss with respect to the confidentiality covenant of the Employment Agreement.

### 2. Section Seven's Non-Solicitation Provision

Section seven contains the non-solicitation provision, prohibiting Henshaw from diverting business away from BAG through solicitation of its customers and suppliers. The covenant's clear language states that it applies for one year "following termination of this Agreement." (Employment Agreement ¶ 7.) Comparatively, the non-servicing covenant, also part of section seven, applies for one year "following the termination of employment." The use of both "employment" and "agreement" within the two covenants indicates that the parties intended to tie the non-solicitation provision to the expiration of the underlying agreement and tie the non-servicing provision to Henshaw's actual employment. Because the underlying Employment Agreement expired by its clear terms on January 6, 1994, the non-solicitation provision terminated on January 6, 1995. As such, BAG cannot plausibly plead a claim for breach-of-contract for diverting business through solicitation.

Accordingly, the Court will grant Henshaw's Motion to Dismiss with prejudice with respect to the non-solicitation covenant.

## IV. BAG'S MOTION FOR A PRELIMINARY INJUNCTION

The remaining requests in BAG's Motion for a Preliminary Injunction seek to enjoin Henshaw from (1) providing services to certain BAG customers and suppliers and (2) diverting BAG's business through solicitation of certain BAG customers and suppliers. Both requests find their basis in Section Seven of the Employment Agreement.

**A. Standard of Review**

Whether a preliminary injunction should issue turns upon the five *Dataphase* factors: (1) the probability of the movant succeeding on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury in granting the injunction will inflict on the non-movant; and (4) the public interest. *Dataphase Sys. Inc. v. CL Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

The core "question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."   *Dataphase*, 640 F.2d at 113.   Because "a preliminary injunction is an extraordinary and drastic remedy, one [] should not be granted unless the movant, by a clear showing, carries the burden of persuasion."   *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation and emphasis omitted).

**B. Analysis**

BAG must demonstrate a "fair chance of prevailing" on the merits of its underlying claim. *Planned Parenthood Minnesota, N. Dakota, S. Dakota v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008).

BAG alleges three counts against Henshaw in its Complaint: (1) breach-of-contract for (a) providing services to a competitor, (b) using BAG's confidential information, and (c) diverting business through solicitation; (2) breach of the duty of loyalty; and (3)

tortious interference with business relations. BAG fails to demonstrate a likelihood of success on the merits of any of its underlying claims.

As to breach-of-contract, BAG has disclaimed any intention to enforce the non-servicing provision as it pertains to its competitors and states it only seeks to prevent Henshaw from servicing customers and suppliers. BAG, however, only alleges Henshaw violated the non-servicing provision by providing services to a BAG competitor. BAG has therefore shown that it has no chance of success on the merits of this claim. Further, because the Court found that the non-solicitation provision expired over twenty-five years ago, BAG has shown no chance of success on the merits of its claim related to Henshaw's alleged violation of the non-solicitation provision. Finally, while BAG does not move the Court to enjoin Henshaw from violating the confidentiality provision, even if it had, "there is little evidence that [Henshaw] now possesses confidential [BAG] information, apart from what he might retain in his memory." *Midwest Sign & Screen Printing Supply Co. v. Dalpe*, 386 F. Supp. 3d 1037, 1054 (D. Minn. 2019) (cleaned up). Although discovery could reveal pertinent facts, BAG cannot demonstrate a fair chance of success on the merits now because BAG only alleges Henshaw violated that covenant "upon information and belief."

In addition to its breach-of-contract claim, BAG also alleged (1) tortious interference with business relations and (2) breach of the duty of loyalty. These two claims, however, cannot serve as BAG's underlying claim for injunctive relief.

With respect to tortious interference, BAG alleges that Henshaw interfered with its business relations by violating the restrictive covenants in the Employment Agreement. Yet, under Minnesota law, BAG must allege more than a breach-of-contract: Henshaw must have been independently tortious or in violation of a state or federal statute or regulation. *See Gieseke ex rel. Diversified Water Diversion, Inc. v. IDCA, Inc.*, 844 N.W.2d 210, 219 (Minn. 2014) (listing the five required elements for this cause of action); *see also Witte Transp. Co. v. Murphy Motor Freight Lines, Inc.*, 291 Minn. 461, 466, 193 N.W.2d 148, 151 (1971) (holding that the interference must be wanton, willful, or intentionally tortious, such as sending falsified letters to customers). Because BAG has not alleged Henshaw committed an independently tortious action or violated the law, BAG cannot show a fair chance of success on the merits.

With respect to the breach of the duty of loyalty, this duty only exists while employed. *See Rehab. Specialists, Inc. v. Koering*, 404 N.W.2d 301, 304 (Minn. Ct. App. 1987) (citing *Sanitary Farm Dairies, Inc. v. Wolf,* 112 N.W.2d 42 (1961)). Thus, while BAG could still pursue damages for a breach of the duty of loyalty that occurred in the past, it faces no prospective harm that warrants granting a preliminary injunction under this theory because Henshaw is no longer employed by BAG.

Because BAG has failed to show a "fair chance of prevailing" on the merits of any its underlying claims that could support granting a preliminary injunction, the Court "need not address the remaining *Dataphase* factors." *Planned Parenthood*, 530 F.3d at 732,

737.  The Court therefore finds BAG has failed to make a clear showing that "the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined."  *Dataphase*, 640 F.2d at 113.

Accordingly, the Court will Deny BAG's Motion for a Preliminary in Injunction.

## ORDER

Based on the foregoing, and the records, files, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.  Defendant's Motion to Dismiss [Docket No. 12] is **GRANTED in part and DENIED in part** as follows:

    a.  The motion is **DENIED** as to Defendant's request to stay or dismiss the proceedings under the first-filed rule;

    b.  The motion is **DENIED** as to Plaintiff's breach-of-contract claim with respect to Section Six, the covenant not to use or disclose confidential information.

    c.  The motion is **GRANTED** as to Plaintiff's breach-of-contract claims with respect to Section Seven, the covenant not to compete, as follows:

        i.  BAG's claim for breach-of-contract under the covenant not to divert business through solicitation are **DISMISSED WITH PREJUDICE**;

ii. BAG's claim for breach-of-contract under the covenant not to provide services to a competitor are **DISMISSED WITHOUT PREJUDICE**;

2.      Plaintiff's Motion for Preliminary Injunction [Docket No. 5] is **DENIED**;

3.      Judgment shall be entered only on:

a. The portion of the Motion to Dismiss granting dismissal of Plaintiff's breach-of-contract claims as discussed in paragraph 1(c) of this Order under Rule 12(b)(6); and

b. On denial of the preliminary injunction motion.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 16, 2020                        _____
at Minneapolis, Minnesota.                              JOHN R. TUNHEIM
                                                  United States District Judge