# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Brand Advantage Group, Inc.,

        Plaintiff,

v.

Dave Henshaw,

        Defendant.

Case No. 20-cv-0225 (JRT/HB)

**ORDER**

---

HILDY BOWBEER, United States Magistrate Judge

This matter is before the Court on Plaintiff Brand Advantage Group, Inc.'s Motion to Compel [Doc. No. 66] and Defendant Dave Henshaw's Motion to Bifurcate and Compel [Doc. No. 73].  The Court held a hearing on July 15, 2020, and took under advisement Brand Advantage Group, Inc.'s Motion to Compel, took under advisement Dave Henshaw's Motion to Bifurcate and request to file an early motion for summary judgment, and granted Dave Henshaw's Motion to Compel.  (*See* Ct. Mins. [Doc. No. 84].)

## I.    Background

Brand Advantage Group (BAG) provides commercial printing services.  (Compl. ¶ 1 [Doc. No. 1-1].)  Dave Henshaw (Henshaw) worked as a sales representative for BAG until he resigned on December 13, 2019.  (*Id.* ¶¶ 2, 15.)  Before Henshaw's employment with BAG, he worked for Quality and Safeguard Business Systems, Inc. (Quality),

beginning in 1993.  (*Id.* ¶¶ 7–8.)  Safeguard Acquisitions, Inc. (SAI) purchased Quality's

assets in 2014, and BAG purchased SAI's assets in 2017.  (*Id.* ¶ 12.)  Henshaw's

employment continued throughout the acquisitions until his resignation.

Henshaw and Quality entered into an employment agreement in 1993.  (*Id.* ¶ 8.)

The term of the agreement as a whole was January 6, 1993 to January 6, 1994.  (Compl.

Ex. A at 4.)  The agreement contained a confidentiality clause that prohibited Henshaw

from divulging or using any of Quality's proprietary information for his benefit or the

benefit of another, "either during the term of this Agreement or afterwards," and that

provided it "shall apply notwithstanding the termination of the contractual relationship

created hereunder."  (*Id.* at 7.)  A broad covenant-not-to-compete was limited in duration

to one year after the termination of employment, and a narrower covenant-not-to-compete

was limited to one year after the agreement terminated.  (*Id.* at 7–8.)  The employment

agreement also provided that the agreement inured to the benefit of Quality's successors

and assigns.  (*Id.* at 12.)  BAG alleges it acquired the rights to enforce the employment

agreement through its acquisition of SAI.  (Compl. ¶ 3.)

After Henshaw resigned from BAG, he began working for American Solutions for

Business (ASB).  (*Id.* ¶ 18.)  BAG believes Henshaw solicited its customers before he left

and disclosed or used confidential information such as pricing, customer preferences and

purchase history, costs, and profit margins in his work for ASB.  (*Id.* ¶ 17.)

BAG commenced this lawsuit against Henshaw in early 2020, asserting three

claims: (1) breach of contract, (2) breach of the duty of loyalty, and (3) tortious

2

interference of business relations.  (*Id.* ¶¶ 21–36.)  The breach-of-contract claim had four components: (1) use or disclosure of BAG's confidential information, (2) solicitation of customers, (3) providing services for a competitor, and (4) diverting BAG's business or customers.  (*Id.* ¶ 22.)  The duty-of-loyalty and tortious-interference claims were based on allegations that Henshaw solicited BAG's customers and used BAG's confidential information for his or ASB's benefit, in violation of the employment agreement and "common law obligations."  (*Id.* ¶¶ 30, 35.)

Days after the case was filed, BAG filed a motion for a preliminary injunction to prohibit Henshaw from soliciting its customers and diverting business to ASB.  Henshaw filed a motion to dismiss the breach-of-contract claims based on the expiration of the employment agreement or, alternatively, to stay the case under the first-filed rule in favor of a case Henshaw had filed against BAG in Wisconsin state court shortly before BAG brought this case against Henshaw.

The Honorable John R. Tunheim, Chief Judge, United States District Court for the District of Minnesota, denied Henshaw's motion to stay, finding that Henshaw knew BAG was going to file suit and misled BAG into believing he needed additional time to respond to a demand letter, when he really intended to use the additional time to file suit preemptively in Wisconsin state court.  (Order at 11, Apr. 16, 2020 [Doc. No. 50].) Judge Tunheim further determined that the employment agreement as a whole expired in 1994, but that the confidentiality provision survived the expiration of the underlying agreement and that BAG plausibly pleaded a claim for breach of the confidentiality

3

provision.  (*Id.* at 16.)  On the other hand, he found BAG did not plausibly plead a claim

under the non-solicitation provision because that section, by its terms, applied for only

one year after the employment agreement terminated.  (*Id.* at 17.)  Thus, the solicitation-

of-customers, provision-of-services-for-a-competitor, and diversion-of-business-and-

customers aspects of the contractual claim were dismissed.  (*Id.* at 9 n.1, 17.)  Finally,

BAG's motion for a preliminary injunction was denied because BAG had not

demonstrated a likelihood of success on the merits for any of its claims.  (*Id.* at 18–19.)

While these motions were pending before Judge Tunheim, the undersigned entered

a Pretrial Scheduling Order that called for the parties to move ahead with written

discovery but to defer deposition discovery until after the motions were decided.  [Doc.

No. 36.]  On July 6, 2020, the Court entered a Second Pretrial Scheduling Order that

provided for discovery to move forward on all issues remaining in the case.  [Doc.

No. 80.]  In so doing, the Court denied Henshaw's request that discovery be staged to

focus initially only on the information relevant to an early motion for summary judgment

he hoped to file.  The Court noted that although this case "may warrant early summary

judgment practice (provided permission is sought and granted as set forth [in the

scheduling order], it is not persuaded that phased discovery is appropriate at this time"

but that it "may revisit that decision upon motion or in the event permission is granted to

file an early motion for summary judgment."  (*Id.* at 3.)  Henshaw's instant motion asks

the Court to revisit that decision now.  At about the same time, BAG moved to compel

responses to written discovery, arguing that Henshaw has failed to turn over documents

4

responsive to a number of its requests.

The Court will first address Henshaw's motion to bifurcate and for permission to file an early motion for summary judgment, since the outcome of that motion would affect the outcome of BAG's motion to compel (if not render it moot altogether).

## II.   Henshaw's Motion to Bifurcate and Request to File an Early Motion for Summary Judgment

Henshaw argues he is entitled to early summary judgment because "(1) he has no duty to maintain any confidential information for the benefit of BAG under the 1993 Employment Agreement, and (2) there is no basis other than the employment agreement for asserting a continuing duty after his BAG employment ended."  (Def.'s Mem. Supp. Mot. Bifurcate at 2 [Doc. No. 74].)  Although the precise grounds for his prospective motion were not described in detail, it appears he would intend to argue both that no information learned by Henshaw from his employer after the employment agreement expired in 1994 was subject to a duty of confidentiality, and that in any event, BAG did not succeed to any of the obligations Henshaw may have owed its predecessors.  BAG opposes Henshaw's proposed summary judgment motion on the grounds that the motion will challenge only the remaining breach-of-contract claim and thus will not resolve the two remaining tort claims, and that bifurcation is appropriate only in cases that are complex or involve a threshold issue that must be decided before the case proceeds on the merits, neither of which is the case here.  (Pl.'s Mem. Opp'n at 5, 7 [Doc. No. 81].)

Generally, courts discourage piecemeal motions for summary judgment.  *See, e.g.*, *In re Nat'l Hockey League Players' Concussion Injury Litig.*, No. 14-MDL-2551

(SRN/BRT), 2017 WL 3141921, at *2 (D. Minn. July 24, 2017); *Prow v. Roy*, No. 15-CV-3857 (PAM/SER), 2016 WL 4618890, at *2 (D. Minn. Sept. 6, 2016) (denying request to file an early summary judgment motion because "short-term speed will not replace long-term efficiency"). Thus, typical of scheduling orders entered in this District, the Second Pretrial Scheduling Order in this case prohibits the parties from filing a motion for summary judgment before all discovery has been completed unless permission is first obtained from the Court. (Order at 14, July 6, 2020 [Doc. No. 80].) The party seeking to file an early motion for summary judgment must file a letter setting forth the basis for the motion, assuring that discovery relating to the issue to be addressed by motion is complete, and explaining how judicial efficiency would be served.[1] (*Id.*)

Henshaw has not convinced the Court that judicial efficiency would be served by allowing him to file an early motion for summary judgment in this case. First, Henshaw has not shown, either in his written filings or at the motion hearing, that an early motion for summary judgment would likely dispose of the case in its entirety. The early motion Henshaw described in his brief would seek summary judgment only on the remaining contract claim, and the tortious-interference and breach-of-fiduciary-duty claims would remain in the case even if the motion were granted.[2] Second, Henshaw has not shown

---

[1] The Court treats the instant motion as a substitute for the letter request called for by the scheduling order.

[2] Though Henshaw does not propose including the tortious-interference or breach-of-fiduciary-duty claims in his early motion for summary judgment, it is worth noting that discovery is not complete on those claims. Thus, a motion for summary judgment on those claims would be premature and subject to a Rule 56(d) challenge.

that if summary judgment were granted only on the breach-of-contract claim, leaving the tortious interference and breach-of-fiduciary-duty claims in play, it would significantly limit the scope of discovery, materially narrow the issues for trial, pave the way for an early settlement, or achieve some similar efficiency or benefit.

Henshaw suggested at the motion hearing that if summary judgment were granted on the remaining contract claim, there would be no basis for venue in the District of Minnesota, and that principles of comity would warrant that this Court abstain in favor of the Wisconsin state court action. But by the time Henshaw's summary judgment motion could be heard and decided, Henshaw would face a high hurdle to show that abstention would be warranted. This is especially true in light of Judge Tunheim's finding that Henshaw acted in bad faith in misleading BAG into believing he needed additional time to respond to a demand letter, when he really intended to use the additional time to file suit preemptively in Wisconsin state court. (Order at 11 [Doc. No. 50].) In short, it is doubtful that an early motion for partial summary judgment would create more efficiencies than it would cost.

A procedural wrinkle concerning the nature of the early summary judgment motion surfaced during oral argument and must be addressed briefly. Henshaw asserted at the hearing that he also intended to move to *dismiss*—for failure to state a claim—the remaining contract claim, as well as the tortious-interference and fiduciary-duty claims. But Henshaw has already filed one Rule 12(b)(6) motion to dismiss, and because he has now filed an answer [Doc. No. 63], he is barred from raising that defense by motion. *See*

Fed. R. Civ. P. 12(b) (requiring that a motion raising the defense of failure to state a claim on which relief can be granted must be made before a responsive pleading is filed). Thus, Henshaw is procedurally foreclosed from seeking to dismiss any claim for failure to state a claim.  With respect to Henshaw's counsel's comments at the hearing that BAG has not come forth with any evidence to prove a breach of the duty of loyalty or a contract with which Henshaw allegedly interfered, those matters are the subject of ongoing discovery.

A question also arose at the hearing concerning the basis for BAG's assertion that Henshaw owes it a continuing duty to keep its information confidential.  The claim as currently pleaded appears to be founded solely on the confidentiality provision of the employment agreement.  BAG's counsel mentioned the possibility of seeking to amend the complaint to plead a common law duty of confidentiality, in addition to the existing alleged contractual duty of confidentiality.  BAG is free to seek leave to amend the complaint if it so chooses.  The Court does not comment here on the merits or likely outcome of such a motion, but notes that any possible narrowing of discovery that might have been achieved by an early motion for summary judgment on the breach of contract claim (if granted) would be erased if BAG were successful in moving to amend its complaint to add a count premised on a claimed common law duty to keep an employer's information confidential.

For the above reasons, the Court finds that an early motion for partial summary judgment would not be worthwhile.  The Court therefore denies Henshaw's request to file

an early partial motion for summary judgment, but denies the request without prejudice in case new circumstances or discovery justify a second request.  Because Henshaw's motion to bifurcate discovery is dependent on his request to file an early partial motion for summary judgment, the motion to bifurcate is also denied.

## III.   Brand Advantage Group, Inc.'s Motion to Compel

### A.    Standard of Review

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ."  Fed. R. Civ. P. 26(b)(1).  In determining whether discovery is proportional to the needs of a case, the Court considers "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  *Id.*  As long as information falls within this scope, it need not be admissible to be discoverable.  *Id.*

### B.    Interrogatory Nos. 6 and 9 and Document Request Nos. 1–5 and 7

These discovery requests seek information and documents concerning Henshaw's communications with BAG's customers.  Specifically, Interrogatory No. 6 asked Henshaw to identify and describe all contacts and solicitations in which Henshaw engaged on behalf of ASB with customers with whom he had contact during his employment with BAG.  (Viksnins Decl. Ex. 3 at 6–7 [Doc. No. 70-1].)  Interrogatory No. 9 asked the same question with regard to suppliers with whom Henshaw had dealt

during his employment with BAG.  (*Id.* at 9.)  Document Request Nos. 1 and 2 sought all documents concerning requests, proposals, or solicitations made by Henshaw on behalf of ASB to any company that was a BAG customer during Henshaw's final six months with BAG (regardless of whether Henshaw himself had dealt with that customer on behalf of BAG), or with whom Henshaw had dealings or contact at any time during his employment with BAG.  (*Id.* at 14.)  Document Request Nos. 3 and 4 sought all documents concerning Henshaw's communications since November 1, 2019, with specific BAG customers and suppliers.  (*Id.* at 15–16.)  Request No. 5 sought all communications Henshaw had after November 1, 2019, with any companies listed on his "2019 BAG gross margin reports" that pertained to his plans to leave BAG, join ASB, or provide products or services on behalf of ASB.  (*Id.* at 16.)  And Request No. 7 sought all proposals, purchase orders, and invoices from November 1, 2019 to present that Henshaw or ASB had sent to any company that was a BAG customer at any time during Henshaw's employment with BAG (regardless of whether Henshaw had direct dealings with that customer).  (*Id.* at 17.)

During the meet-and-confer process and in its motion papers, BAG offered to narrow the scope of these requests to "communications with BAG customers before and after Henshaw's employment with BAG on the following topics: (a) prices charged by BAG or a comparison of prices charged by ASB and BAG; (b) customers' "needs and preferences"; (c) customers' purchasing histories; and (d) references to BAG, Dave Daoust, or other BAG employees.  (BAG Mem. Supp. Mot. Compel at 14 [Doc. No. 71].)

"The intent of these limitations was to exclude from discovery general solicitations by Henshaw and, instead, focus on Henshaw's communications in which BAG's confidential information may have been used or disclosed, such as BAG's prices or Henshaw's knowledge of customers' needs, preferences, and purchasing histories." (*Id.*)

Henshaw objected to all of these requests initially and in his response to BAG's motion on grounds of burdensomeness, overbreadth, relevance, prematurity, and proportionality. He also objected to the discovery requests as harassing and posed for an ulterior competitive purpose. Further, he objected in his responses to the temporal scope of Interrogatory No. 9 and Request No. 1, stating that he had not contacted any customers on behalf of ASB until after he had left BAG's employment (and implying that any request for information about post-BAG employment communications with BAG customers was thus irrelevant). Finally, for some of the document requests, Henshaw also responded that the information sought could be found on his BAG laptop, which he returned to BAG when he ceased employment.

For its part, BAG does not dispute that it has Henshaw's BAG laptop and that responsive information is on it, but BAG argues that Henshaw must still search for any responsive and relevant documents still in his possession. It points out, for example, that Henshaw had both a personal email account and a mobile phone that he used for business purposes, and that Henshaw's counsel has acknowledged in meet-and-confers that Henshaw possessed and would produce responsive documents, but that as of the date of the motion was filed, he had not yet done so.

11

With one reservation discussed *infra* on page 14, the Court finds that Interrogatory Nos. 6 and 9, and Request Nos. 1-5 and 7, as limited by BAG in its moving papers, call for information from Henshaw that is relevant and proportional to the issues in the case. First, with regard to Henshaw's objection to "prematurity," the Court has already denied his motion to stay discovery, so discovery that seeks information relevant to any of the issues remaining in this case, including the claim that Henshaw has breached his employment agreement by using or disclosing BAG's confidential information for his own benefit or for the benefit of ASB, is appropriate unless it is subject to another legitimate objection. Second, with regard to Henshaw's objection to burdensomeness, Henshaw did not provide the Court with any concrete basis on which to conclude that it would be unduly burdensome for him to answer the interrogatories and search the materials in his own possession, custody, or control for information and documents responsive to those requests as narrowed by BAG.

Third, with regard to his objection to the temporal scope of Interrogatory No. 9 and Request No. 1 and the implication that it was sufficient for him to respond only that he did not contact any customers on behalf of ASB until after he left BAG's employment, the objection—and the representation—fail to account for (1) the possibility that he could have breached his duty of loyalty by contacting customers before he left BAG in an attempt to solicit them to leave BAG upon his anticipated departure, even if not specifically on behalf of ASB, (2) the fact that BAG claims he used its confidential information after he left BAG to solicit customers on behalf of ASB, and is entitled to

12

conduct discovery on that claim, and (3) BAG's tortious interference claim.  In short, simply because the non-solicitation claim was dismissed does not by itself render all post-BAG communications irrelevant so long as Henshaw represents that he did not solicit customers on ASB's behalf before he left BAG.

Fourth, with respect to Henshaw's "objection" to any discovery request on the ground that it was propounded for an improper competitive motive, that is not a valid objection.  If the discovery is relevant to one or more of the three remaining claims and proportional to the needs of the case, it should be produced.  If the information is competitively sensitive, any concern that the receiving party may misuse it for its own competitive purposes can be addressed by producing it under the Protective Order [Doc. No. 43] entered in this case.

Fifth, Henshaw argues that BAG has not come forth with facts to support its claims.  That is not the standard for obtaining discovery, however.  Rule 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."   The breach of contract claim based on the confidentiality provision, the breach of the duty of loyalty claim, and the tortious interference claim are all in the case and fair game for discovery.  Henshaw's Rule 12(b)(6) motion is in the rearview mirror.  Whether facts exist to support the claims that survived that motion will be a question for summary judgment, when the time comes.

That brings the Court to Henshaw's objection that the requests are overly broad.

13

The Court agrees that, as initially framed, they were.  But the Court finds that BAG's further limitation of the requests to "communications with BAG customers before and after Henshaw's employment with BAG on the following topics: (a) prices charged by BAG or a comparison of prices charged by ASB and BAG; (b) customers' 'needs and preferences'; (c) customers' purchasing histories; and (d) references to BAG, Dave Daoust, or other BAG employees" remedied the overbreadth.  The Court's only reservation is the somewhat generalized reference to "customers' 'needs and preferences.'"  While it may be that some information about "needs and preferences" is legitimately characterized as confidential, it is highly unlikely that all such information is confidential; indeed, one assumes the customers themselves are not shy about speaking with prospective suppliers and business partners about their own "needs and preferences."  However, Henshaw failed to engage in a robust meet and confer that might have further refined or limited that description, and the Court therefore will not take it upon itself to limit it further.[3]

Accordingly, the Court orders Henshaw to answer in full Interrogatories 6 and 9, and to respond in full to Document Request Nos. 1–5 and 7, as those interrogatories and requests were narrowed by BAG.  In responding to the requests, Henshaw must conduct a diligent search of paper and electronically stored documents and files in his possession, custody, and control, including but not limited to any home computer, portable media,

---

[3]  The Court notes, however, that if BAG should serve further discovery on that topic, the ruling here would not preclude the Court from revisiting the appropriate scope of discovery into communications about "customers' 'needs and preferences.'"

and mobile devices on which such documents and files are reasonably likely to be stored, and must produce all responsive, non-privileged documents in a format consistent with the ESI Protocol [Doc. No. 41] entered in this case.

### C.      BAG's Request No. 25

This request for documents originally sought Henshaw's calendars, schedules, and diaries from November 1, 2019, through the present, with personal appointments redacted.  (Viksnins Decl. Ex. 3 at 26.)  BAG subsequently narrowed the request to the period November 1, 2019 through December 13, 2019.  (*See* Pl.'s Mot. Compel at 1 [Doc. No. 66].)  BAG contends the requested documents are relevant to the duty-of-loyalty claim because the calendars, schedules, and diaries will reflect any meetings Henshaw had with BAG customers immediately before he left employment.

Henshaw objected on the grounds of overbreadth, burdensomeness, relevance, and harassment, and also that the requested information would be on his company laptop which is now in BAG's possession.  The Court overrules the objections and finds the request, as narrowed, seeks relevant information and is not overly broad or burdensome. Henshaw is therefore ordered to respond to the request, as narrowed, in full, insofar as he has any of the requested information in his own possession, custody, or control.

### D.      Interrogatory No. 8 and Document Request No. 11

These discovery requests seek information about a business trip Henshaw took to Indiana and Kentucky in December 2019, shortly before he left BAG's employment. Interrogatory No. 8 asks Henshaw to identify all customers or prospects he visited and

provide any documents concerning the visit (Viksnins Decl. Ex. 3 at 8), and Request No. 11 seeks all documents concerning the trip, including all communications with the customers he visited on that trip (*id.* at 19). BAG argues the information is relevant to the breach of the duty of loyalty claim, and notes that it has information indicating that at least one customer Henshaw visited on this trip moved its business to ASB shortly after the trip.

Henshaw objects that the requests are overly broad, unduly burdensome, and seek irrelevant information. He also objects that Request No. 11 is vague. Finally, he objects that the information sought is on his BAG company laptop. The Court disagrees, and orders Henshaw to respond to Interrogatory No. 8 and Request No. 11 in full to the extent he can by conducting a diligent search of information and materials in his possession, custody or control. In so doing, the Court understands Request No. 11 to seek documents and communications pertaining to that trip, including documents reflecting or referring to the trip itself and/or to his communications and visits with customers and prospective customers while he was on the trip. The Court does not interpret Request No. 11 to seek all *subsequent* communications with every customer or prospective customer he visited, except to the extent those subsequent communications refer to, reflect, or follow up on the visits or the trip.

### E.    Interrogatory No. 12 and Document Request Nos. 8, 9, 26, and 28

Through these discovery requests, BAG seeks discovery concerning Henshaw's communications with his new employer ASB. Interrogatory No. 12, as originally framed,

asks Henshaw to identify "any and all documents or information you have provided to ASB concerning BAG."  (Viksnins Decl. Ex. 3 at 11.)  Request Nos. 8 and 9 seek all documents concerning Henshaw's communications with ASB about leaving BAG or joining ASB, and all documents concerning BAG that Henshaw provided to ASB.  (*Id.* at 18.)  Request Nos. 26 and 28 request all documents concerning communications between Henshaw and ASB in which BAG or any of its customers are mentioned, or that mention any of the customers for whom Henshaw worked while at BAG or discussed which of those customers might switch to ASB if Henshaw joined ASB.  (*Id.* at 26–27.)

Henshaw again objected on the grounds of overbreadth, burden, relevance, and that the requests were propounded for the purpose of harassment or for an ulterior competitive purpose.  Henshaw also objected to Interrogatory No. 12 and subsequent interrogatories as exceeding the pretrial scheduling order's 25-interrogatory limit.  As it had with regard to Interrogatories 6 and 9 and Request Nos. 1–5 and 7, discussed above, BAG agreed during the meet and confer process, and again in its motion papers, to narrow these discovery requests to communications relating to (a) prices charged by BAG or a comparison of prices charged by ASB and BAG; (b) customers' needs and preferences; (c) customers' purchasing histories; and (d) references to BAG, Dave Daoust, or other BAG employees.  (Pl.'s Mem. Supp. Mot. Compel at 14.)

The Court's analysis and conclusions here are similar to those described in Section III.B, *supra*, with one clarification.  Request No. 8, even as narrowed, could on its face be interpreted as seeking communications pertaining to "needs and preferences"

and "purchasing histories" of *any* customer discussed by Henshaw and ASB, not just

BAG customers, although the Court doubts BAG intended that interpretation.  Such an

interpretation would be overly broad and would go beyond what is relevant to the claims

or defenses in this case.  Subject to that clarification, Henshaw is ordered to respond in

full to these requests, as narrowed.  To the extent Henshaw believes any responsive

information is confidential, he can produce it pursuant to the protective order.

The Court overrules Henshaw's objection to this and subsequent interrogatories

that BAG exceeded the 25-interrogatory limit.  The inclusion of detail in an interrogatory

to make it clear what the interrogatory is intended to include is not the same thing as

propounding a compound interrogatory that contains "discrete subparts" that should be

counted separately pursuant to Rule 33(a)(1).

### F.      Interrogatory Nos. 10 and 16 and Document Request Nos. 10, 12, and 13

Interrogatory Nos. 10 and 16 and Request Nos. 10, 12, and 13 seek information

about Henshaw's compensation, financial incentives, and employment agreements with

ASB.  (Viksnins Decl. Ex. 3 at 9, 13, 19, 20.)  Specifically, Interrogatory No. 10 asks for

Henshaw's total compensation from ASB, how it was calculated, and how much was

attributable to customers that were BAG customers during Henshaw's final six months at

BAG (whether or not Henshaw dealt directly with them) or were BAG customers with

whom he had dealings at any time during his BAG tenure.  (*Id.* at 9.)  Request Nos. 10

and 12 seek all documents relating to his compensation and how it was calculated, and all

documents concerning any compensation based on revenues from companies that "are or

have been BAG customers." (*Id.* at 19, 20.)  Interrogatory No. 16 seeks identification of all agreements between Henshaw and ASB (*id.* at 10), and Request No. 13 demands copies of those agreements (*id.* at 20).  Henshaw objected to the requests on numerous grounds, including that they are not relevant because Judge Tunheim dismissed the non-solicitation claim, and that they seek competitively sensitive information for an ulterior purpose.  BAG argues the information is relevant to its tortious interference claim, specifically the damages element, and will reveal how much money Henshaw has generated from BAG customers and what incentives ASG provided for Henshaw to move accounts from BAG to ASB.

At this time, the Court finds these requests overly broad and premature.  While some subset of the information requested may be pertinent to BAG's remaining claims, they are far too broad in their sweep, and for the most part seem anchored in the claim that is no longer in the case, i.e., that Henshaw "poached" BAG customers after leaving its employ.  Furthermore, on their face, the requests are not limited to customers who were BAG customers in any particular time frame relevant to this case, but could include customers who were BAG customers at any time in its history, and regardless of Henshaw's involvement with them then or since.

The Court notes that BAG may get some of the requested information to the extent it falls within the scope of other requests that the Court has ordered Henshaw to answer[4],

---

[4] For example, documents and information responsive to Interrogatory No. 12 and Request Nos. 8, 9, 26, and 28, as narrowed, might include information that involves

but the Court is denying BAG's motion as to these requests at this time.  If based on information gathered in discovery, BAG can show evidence of specific customers that Henshaw solicited for himself or for ASB before he left BAG, or evidence of specific confidential BAG information used by Henshaw to help switch a customer to ASB, then BAG may renew its motion with regard to these requests or, even better, reframe these requests to seek information that is more focused on what is relevant to its claims in this case.

### G.      Document Request No. 14

Document Request No. 14 asks for all documents concerning BAG that Henshaw did not return on December 19, 2019, and that remain in his possession, custody, or control.  Henshaw responds that he has produced all responsive documents in his possession.  BAG does not believe Henshaw because, BAG attests, Henshaw once kept file cabinets full of customer files at his home office, yet he produced only 18 pages of paper documents and no customer files.  Henshaw does not contend he should not have to produce all documents responsive to Request No. 14.  He states instead, by affidavit, that he has done so, and offers an explanation as to why BAG's information is outdated and does not accurately reflect what he had at the time he left BAG's employ.

At this time, the Court does not have a basis to conclude that Henshaw has misrepresented the situation, but notes that he will be required to conduct a diligent

---

Henshaw's employment agreement or communications about how his compensation will be calculated vis a vis his success in attracting former BAG customers.

search of both paper and electronic documents and data in his possession, custody, and control in responding to this Order.  If in the course of that search, or at any time in the future as this case proceeds, he finds or remembers other documents that are responsive to Request No. 14, he must notify BAG immediately and produce them promptly.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Brand Advantage Group, Inc.'s Motion to Compel [Doc. No. 66] is **GRANTED IN PART AND DENIED IN PART,** as more fully set forth herein; and

2. Defendant Dave Henshaw's Motion to Bifurcate and Compel [Doc. No. 73] is **DENIED** as to the Motion to Bifurcate, **DENIED WITHOUT PREJUDICE** as to the request to file an early partial motion for summary judgment, and **GRANTED** as to the Motion to Compel.

Dated:  August 28, 2020                              _s/ Hildy Bowbeer_____
                                                                       HILDY BOWBEER
                                                                       United States Magistrate Judge